**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

JANE DOE, an individual,

        *Plaintiff,*                  **CASE NO.:**

v.

WYNDHAM VACATION
OWNERSHIP, INC., a
Delaware corporation,

        *Defendant*
_____/

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff Jane Doe ("Plaintiff"), through undersigned counsel, files this Complaint and Demand for Jury Trial against Wyndham Vacation Ownership, Inc. ("Wyndham" or the "Company"), and states:

## INTRODUCTION

1.    Plaintiff seeks damages arising from Defendant's violations of Title VII of the Civil Rights Act of 1964 ("Title VII") and the Florida Civil Rights Act ("FCRA"), as well as for damages arising from Defendant's negligent supervision, negligent retention, and defamation *per se*.

## PARTIES

2.    Plaintiff is a citizen of Dorchester County, South Carolina. During her tenure with Wyndham, Plaintiff was its employee within the meaning for 42 U.S.C. § 2000e(f).

3.      Wyndham is a Delaware corporation with its principal address at 6277 Sea Harbor, Drive, Orlando, Florida. All members of Wyndham are citizens of states other than South Carolina. At all times material, Wyndham has continuously done business in the state of Florida, has continuously had more than 500 employees, and has continuously been an employer pursuant to 42 U.S.C. § 2000e(b) and Fla. Stat. § 760.02(6).

## JURISDICTION, VENUE, & CONDITIONS PRECEDENT

4.      This Court has subject matter jurisdiction under 28 U.S.C. § 1331 for claims arising under Title VII.

5.      This Court has supplemental jurisdiction over Plaintiff's state law claims because such claims are so closely related to her claims under Title VII that they form part of the same case or controversy under Article III of the United States Constitution. 28 U.S.C. § 1367.

6.      The Court also has subject matter jurisdiction over this action because the amount in controversy exceeds $75,000.00, exclusive of interest, costs, and attorneys' fees and is between parties of different states. 28 U.S.C. § 1332

7.      This Court has personal jurisdiction over Defendant because Defendant continuously conducts business within this District.

8.      Venue is proper in this District because Defendant is subject to personal jurisdiction in this District and because the acts complained of giving rise to Plaintiff's claims occurred in this District. 28 U.S.C. § 1391

9.     All conditions precedent have been satisfied prior to the filing of this action. Plaintiff dual-filed an EEOC charge (under Title VII and the FCRA) within applicable timeframes and received a right to sue within 90 days of filing this action.

## GENERAL ALLEGATIONS

### a. *Plaintiff Joins Wyndham*

10.    Plaintiff joined Wyndham's Daytona Beach office as a sales representative in February 2018. She immediately excelled. By the end of her tenure, Plaintiff was a top sales representative for Defendant.

### b. *Wyndham Covers Up Plaintiff's Rape by a Coworker*

11.    On April 5, 2019, a fellow Wyndham sales representative raped Plaintiff.

12.    On April 6, 2019, Plaintiff filled out an affidavit documenting the rape with the Daytona Beach Police Department.

13.    Plaintiff immediately notified the human resources manager of the Daytona Office, Linda Bryan.

14.    On April 7, 2019, Ms. Bryan and Chris Robledo (Plaintiff's direct manager at the time), requested a copy of the police report. A fellow employee corroborated Plaintiff's version of events in a human resources report.

15.    Despite the nature of the allegations, police report, and corroboration, Ms. Bryan and Mr. Robeldo were only concerned about protecting Plaintiff's rapist and the Company's image and bottom line. The pair worked together to brush the rape under the rug: Ms. Bryan and Mr. Robeldo told Plaintiff that her rapist would resign from the Company and never be re-hired if she dropped the charges against him.

Plaintiff was told that she could come back to work with the understanding that she would not discuss what happened to her. Plaintiff reluctantly agreed.

### c. Wyndham is Alerted to – and Does Nothing About – Physical and Verbal Abuse and Harassment of Plaintiff in the Workplace

16.    In March 2020, Plaintiff began dating a sales representative named Ramon Diaz. Eventually, Mr. Diaz became physically and verbally abusive. Plaintiff began working to end her relationship with Mr. Diaz. But that was a delicate process, given Mr. Diaz's volatile temper.

17.    By December 2020, Wyndham was aware that Mr. Diaz had assaulted and continued to periodically assault Plaintiff at work and during work hours.

18.    In December 2020, Sha Lauro (then a senior manager, eventually promoted to director) noticed red marks on Plaintiff's arms and that Plaintiff was upset. The marks were attributable to Mr. Diaz, who had grabbed Plaintiff, pulled a surgical mask off her face, and violently choked her—in the office.

19.    Unable to conceal the abuse and in need of help, Plaintiff explained the situation, in detail, to Ms. Lauro. Ms. Lauro responded: "Do you want to file something with HR? You know what will happen." The message was clear: If an employee complained to HR, that person was treated as the problem. This was the reality of working under Messrs. Robeldo and Vice-President Patrick Burk.

20.    In February 2021, Plaintiff was able to end her relationship with Mr. Diaz. Plaintiff did her best to stay away from Mr. Diaz. She explained her situation to

Ms. Robeldo and Mr. Bryan, and told them that she would quit if Mr. Diaz approached her at work.

21.     Things calmed down for a while. It was not to last. In November 2021, Wyndham management assigned Plaintiff and Mr. Diaz to work on a deal together. Wyndham did this despite knowing that:

    a. Mr. Diaz had a propensity for violent behavior that posed a risk to his female colleagues, particularly to Plaintiff;

    b. Plaintiff had ended her relationship with Mr. Diaz because he turned violent and abusive;

    c. Mr. Diaz had physically assaulted Plaintiff at work;

    d. Plaintiff feared for her safety and the prospect of working closely with Mr. Diaz; and

    e. Plaintiff had previously been raped by a co-worker.

22.     Once again in close proximity to Plaintiff, Mr. Diaz immediately began making vulgar sexual comments directed towards her. But his egregious behavior was not limited to words: On numerous occasions Mr. Diaz touched Plaintiff in unwanted and inappropriate ways. This included backing her into corners and pushing his erect penis against her body while saying things like "I want to fuck you" and that she "never looked this good."

23.     Mr. Diaz did nothing to hide his inappropriate behavior. Virtually everyone in the office was aware of his constant leering, licking of lips, hovering, and his unwanted touchings of Plaintiff. In fact, numerous employees started taking it upon

themselves to escort Plaintiff out of the office at the end of the day to protect her from Mr. Diaz.

24.     In December 2021, Plaintiff reported Mr. Diaz's behavior to Ms. Bryan and Mr. Robeldo (who has now been promoted to Company Vice President), as well as Ms. Lauro.

25.     Plaintiff stated that she intended to obtain a temporary restraining order against Mr. Diaz. Just as with her rape, Mr. Robeldo urged Plaintiff not to pursue a restraining order, because it "would complicate things" in the office. The subtext was clear: If Plaintiff pursued a restraining order against Mr. Diaz, her job would be at risk. Mr. Robeldo promised that he would keep Mr. Diaz away from her. That was false.

26.     At this point, Wyndham had already been on notice of Mr. Diaz's violent and abusive behavior for the past year. Plaintiff's formal, handwritten complaint was finalized and filed with Wyndham in January 2022. Despite a year of knowledge and multiple reports, Wyndham did nothing to intervene.

27.     During Wyndham's 'investigation', it reviewed at least two video recordings from Wyndham cameras that demonstrated Mr. Diaz's inappropriate behavior. On approximately January 7, 2022, Plaintiff gave a presentation at work. Mr. Diaz attended. He repeatedly mouthed "I want to fuck you", blew kisses, and licked his lips during the presentation. He also approached the podium where she was speaking and made a comment about wanting to "see [her] in [her] sexy President's Club dress." Multiple co-workers witnessed this and reported it to Mr. Robeldo, as did Plaintiff.

28.     Mr. Robeldo and Ms. Bryan reviewed video of the incident, which showed Mr. Diaz approaching the podium and clearly agitating Plaintiff.  When asked about the situation, Plaintiff confirmed to Mr. Robeldo and Ms. Bryan that she had repeatedly told Mr. Diaz to "stop" what he was doing during this interaction.

29.     Wyndham's response was appalling: Because Plaintiff did not specifically tell Mr. Diaz that his behavior made her "uncomfortable," it was neither harassment nor assault, in the eyes of the Company.

30.     On January 15, 2022, Mr. Diaz walked by Plaintiff as she was working and grabbed her phone. She pled for it back and Mr. Diaz asked her if she "would like [his] head between [her] legs." Plaintiff immediately reported this.

31.     On at least four occasions, beginning no later than February 4, 2022, Plaintiff requested a transfer specifically so she could get away from Mr. Diaz. Mr. Burk denied each transfer request without explanation.

32.     On February 7, 2022, Plaintiff had a stress test on her heart. She failed the test. Her heart condition is directly attributable to the stress of dealing with a serial abuser and a management team that did nothing to protect her.

33.     On February 8, 2022, Mr. Diaz followed Plaintiff into a parking garage at a Wyndham property (that he should not have had access to), asked her to roll her window down, and demanded she get into his car to talk. Plaintiff feared that he was going to abduct her. Plaintiff began yelling so as to get the attention of others and cause a scene in the parking lot. It worked. Mr. Diaz backed away. This was immediately reported to Mr. Robeldo.

### d. *Wyndham Retaliates Against Plaintiff for Reporting Workplace Abuse*

34.     On February 9, 2022, Plaintiff had a meeting with Ms. Bryan and Mr. Robeldo—again: the same two individuals that oversaw Plaintiff's 2019 rape complaint.  There was no update on the status of Plaintiff's HR complaint about Mr. Diaz. Instead, Ms. Bryan and Mr. Robeldo told Plaintiff that she was "walking a fine line," and said that she was partially responsible for the events in the parking lot the day before.

35.     On February 10, 2022, Plaintiff resigned because she could no longer deal with Mr. Diaz's constant sexual harassment, sexual assault, and threatening behavior, Wyndham's unwillingness to take her seriously let alone do anything about it, and the corresponding deterioration of her physical and mental health.

36.     Mr. Robeldo told Plaintiff that she would "never make any money" if she went through with the resignation.

### e. *Wyndham Blackballs Plaintiff and Smears Her Name*

37.     At the time of her departure, Plaintiff was told that she was eligible for rehire by Defendant.

38.     On March 29, 2022, Plaintiff, through a recruiter, applied for a job at Wyndham Fort Lauderdale. She was denied an interview without explanation.

39.     Around the same time, Plaintiff reached out to Mr. Burk and the Senior Vice President of Sales and Marketing Wilson Moore about her rehire. She received no response.

40.    In August 2022, Plaintiff requested an online assessment from Wyndham and received no response.

41.    In September 2022, Plaintiff applied for a job at Wyndham Edisto Island (South Carolina). Again, there was no response.

42.    On October 13, 2022, Plaintiff reapplied to Edisto Island, and was informed that she was ineligible for rehire. Plaintiff messaged Ms. Bryan regarding this and was told that it was due to "compliance" issues. This is a fabrication. At the time of her resignation, Plaintiff had no compliance issues that would render her ineligible for rehire.

43.    Around the same time, Plaintiff inquired with Ms. Lauro regarding her status as ineligible for rehire. Ms. Lauro's response was that Plaintiff had "refuse[d] any accountability" when resigning from Wyndham and Ms. Lauro further stated: "I said there was drama around when you left [because] there was and I didn't want to have conversations about it when you were here when I needed to focus on a busy Sunday or Monday."

44.    On the one hand, Plaintiff cannot get so much as an interview with Wyndham. On the other, her rapist, has faced no such issues. On May 6, 2022, Plaintiff learned that her rapist had gone through training and been given a start date of May 23, 2022 *at the Daytona office*. Mr. Robeldo and Ms. Bryan were aware of his return. Plaintiff raised her concerns, via text, to Mr. Robeldo, who denied knowledge of the hiring.

45.    Without a job and having been blackballed by Wyndham, Plaintiff had to work anywhere she could. She was forced to relocate her family to South Carolina.

46.    But Wyndham was not done tarnishing Plaintiff's name: After Plaintiff's employment with Wyndham ended, a Wyndham agent named Bryan Pare, at the behest of Mr. Robeldo, told multiple Wyndham employees that Plaintiff was lying about her allegations against her abusers and against Wyndham.

## COUNT I
## NEGLIGENT SUPERVISION

47.    Plaintiff repeats and realleges Paragraphs 1-46 as if fully set forth herein.

48.    Plaintiff was assaulted and battered by Mr. Diaz, a Wyndham co-worker. this conduct occurred on Wyndham's premises.

49.    Mr. Diaz's various batteries included physical impacts to Plaintiff's person.

50.    While this conduct occurred on Wyndham's premises and Wyndham's time, Mr. Diaz's sexually charged abuse occurred outside the scope of his Wyndham employment.

51.    Wyndham was aware of Mr. Diaz's sexual harassment, assault, and battery, and yet did not take adequate measures to prevent such misconduct from recurring in the workplace.

52.    Wyndham owed a duty to Plaintiff to use reasonable care in the supervision of its employee, Mr. Diaz. This is particularly true where it was repeatedly apprised of Mr. Diaz's misconduct towards Plaintiff.

53.     Wyndham was aware of multiple specific past instances in which Mr. Diaz harassed, assaulted, and battered Plaintiff. Such misconduct continued after Wyndham was on notice of same.

54.     Wyndham breached its duties to Plaintiff when it failed to take reasonable actions such as disciplining, training, overseeing, or otherwise protecting Plaintiff from Mr. Diaz's sexual harassment, assault, and battery. Thus, after various and ongoing incidents of sexual harassment, assault, and battery, Wyndham failed to supervise Mr. Diaz effectively enough to prevent (or even decrease the likelihood of) future incidents.

55.     As a direct and proximate result of Wyndham's breach of its duties with regard to supervision, Plaintiff suffered substantial injuries and damages in an amount to be determined at trial.

56.     Wyndham was grossly negligent because its behavior entailed a conscious disregard and indifference to Plaintiff's safety and rights. Wyndham engaged in intentional misconduct because it had actual knowledge of the wrongfulness of the conduct and the high probability that injury or damage to the Plaintiff would result. Despite that knowledge, Defendant intentionally pursued its course of conduct resulting in injury and damage to Plaintiff. Consequently, Plaintiff is entitled to and seeks punitive damages.

## COUNT II
## NEGLIGENT RETENTION

57.    Plaintiff repeats and realleges Paragraphs 1-46 as if fully set forth herein.

58.    Plaintiff was assaulted and battered by Mr. Diaz, a Wyndham co-worker. The assaults and batteries occurred on Wyndham's premises.

59.    Mr. Diaz's various batteries included physical impacts on Plaintiff's person.

60.    While this conduct occurred on Wyndham's premises, Mr. Diaz's sexually charged abuse occurred outside the scope of his Wyndham employment.

61.    Wyndham was aware of Mr. Diaz's sexual harassment, assault, and battery, and yet did not take adequate measures to prevent such misconduct from recurring in the workplace.

62.    Wyndham owed a duty to Plaintiff to use reasonable care when determining whether to retain Mr. Diaz after not only having such behavior reported formally, but several high-ranking employees witnessing Mr. Diaz's behavior.

63.    Wyndham was aware of multiple specific past instances in which Mr. Diaz harassed, assaulted, and battered Plaintiff. Such misconduct continued after Wyndham was on notice of same.

64.    Wyndham failed to take reasonable action with regard to Mr. Diaz's ongoing sexually predatory behavior, of which there was only one: Termination. Wyndham refused, time and again, to take the necessary action to protect Plaintiff

from the harassment, assault, and battery perpetrated by Mr. Diaz. This constituted a breach of Wyndham's duties to Plaintiff.

65.     As a direct and proximate result of Wyndham's breach of its duties with regard to retention, Plaintiff suffered substantial injuries and damages in an amount to be determined at trial.

66.     Wyndham was grossly negligent because its behavior entailed a conscious disregard and indifference to Plaintiff's safety and rights. Wyndham engaged in intentional misconduct because it had actual knowledge of the wrongfulness of the conduct and the high probability that injury or damage to the Plaintiff would result. Despite that knowledge, Defendant intentionally pursued its course of conduct resulting in injury and damage to Plaintiff. Consequently, Plaintiff is entitled to and seeks punitive damages.

### COUNT III
### DEFAMATION *PER SE*

67.     Plaintiff repeats and realleges Paragraphs 1-46 as if fully set forth herein.

68.     Defendant, through its agents including Brian Pare, repeatedly stated to Plaintiff's former colleagues that Plaintiff had fabricated her allegations pertaining to (a) Mr. Diaz's workplace treatment of her (including unwanted touchings and comments) and (b) Defendant's misconduct associated with its failure to slow, prevent, and discourage Mr. Diaz's behavior.

69.     Defendant's statements are defamatory *per se* because even when considered alone, they tend to subject Plaintiff to distrust, ridicule, contempt and disgrace that are injurious to Plaintiff's professional reputation.

70.     These statements were aimed at harming Plaintiff's fitness in her profession and her moral character.

71.     At the time the statements were made, Defendant knew or should have known that such statements would cause severe damage to Plaintiff's personal and professional business opportunities, her career, and ultimately her ability to earn a living.

72.     Defendant made these statements with actual malice because it knew of their falsity or made the statements with reckless disregard for their truth or falsity.

73.     Defendant knew that these statements were false when publishing them, or at a minimum had no reason to believe that they were true upon publication.

74.     In making the defamatory statements, Defendant acted intentionally, maliciously, willfully, and with the intent to injure Plaintiff.

75.     Plaintiff has been harmed by the diminished economic value of (1) the goodwill she built at her former employer, and (2) her reputation as an honest, ethical, reliable, hard-working individual. Plaintiff has also suffered economic harm.

76.     Defendant's statements wrongfully paint Plaintiff as unprofessional, untrustworthy, immoral, and unfit for employment.

77.     Defendant's conduct was unreasonable and outrageous, exceeds the bounds tolerated by decent society, and was done willfully, maliciously, and deliberately to cause Plaintiff severe harm.

78.     As a result of Defendant's defamatory statements, Plaintiff has been damaged in an amount to be determined at trial.

79.     Wyndham was grossly negligent because its behavior entailed a conscious disregard and indifference to Plaintiff's safety and rights. Wyndham engaged in intentional misconduct because it had actual knowledge of the wrongfulness of the conduct and the high probability that injury or damage to the Plaintiff would result. Despite that knowledge, Defendant intentionally pursued its course of conduct resulting in injury and damage to Plaintiff. Consequently, Plaintiff is also entitled to and seeks punitive damages.

## COUNT IV
## VIOLATION OF TITLE VII (RETALIATION)

80.     Plaintiff realleges and incorporates by reference paragraphs 1-46 as if fully set forth herein.

81.     Plaintiff engaged in protected activity when she (a) complained of Mr. Diaz's harassment and assault to Defendant (including to her direct supervisor and human resources liaison).

82.     Plaintiff, a woman, is a member of a protected class as defined by Title VII. But for that status, Plaintiff would have been treated differently by Defendant leading up to and after the reporting of Mr. Diaz's misconduct.

83.    Plaintiff suffered materially adverse employment actions through the refusal to correct Mr. Diaz's misconduct (e.g., forcing her to work directly with her abuser on a joint project despite multiple documented instances of misconduct), refusing to remedy any of her complaints, and denying repeated transfer requests. Instead: Defendants (through Mr. Robeldo, Ms. Bryan, and Mr. Burk, at a minimum), turned on Plaintiff (and ratified Mr. Diaz's continuing and worsening workplace conduct).

84.    Defendant's conduct constitutes unlawful retaliation against Plaintiff.

85.    The unlawful employment practices Plaintiff complained of were intentional, with willful and wanton disregard, malice, or reckless indifference for Plaintiff's federally protected rights.

86.    As a result of Defendant's conduct, Plaintiff has been damaged in an amount to be determined at trial.

## COUNT V
## VIOLATION OF TITLE VII (CONSTRUCTIVE DISCHARGE)

87.    Plaintiff realleges and incorporates by reference paragraphs 1-46 as if fully set forth herein.

88.    Plaintiff, a woman, is a member of a protected class as defined by Title VII. But for that status, Plaintiff would have been treated differently by Defendant leading up to and after the reporting of Mr. Diaz's misconduct.

89.    Plaintiff resigned in February 2022. Among other factors contributing to Plaintiff's resignation, the following occurred:

a.  Defendant urged Plaintiff to drop police charges in connection with her 2019 rape by a co-worker;

b.  Defendant urged Plaintiff not to make a formal report of Mr. Diaz's physical and verbal harassment, assault, and battery in December 2020;

c.  Defendant urged Plaintiff not to seek a temporary restraining order against Mr. Diaz in December 2021;

d.  Defendant forced Plaintiff to work in close quarters on a project with Mr. Diaz despite previously promising that she would not be required to work with Mr. Diaz;

e.  Plaintiff was subjected to routine and pervasive unwanted touchings and comments by Mr. Diaz, in plain view of many of Plaintiff's coworkers and superiors;

f.  Plaintiff's job security was threatened by Defendant's management and human resources representative in February 2021;

g.  In January 2022, Defendant's management and human resources representative told Plaintiff that her objections to Mr. Diaz (including forcefully telling him to "stop" encroaching on her space and making vulgar comments) was not enough to warrant reprimand of Mr. Diaz; and

h.  Defendant repeatedly denied Plaintiff's transfer requests to get away from Mr. Diaz.

90.  These working conditions were so intolerable that a reasonable person in Plaintiff's position would have been compelled to resign.

91.  As a result of Defendant's conduct, Plaintiff has been damaged in an amount to be determined at trial.

**COUNT VI**
**VIOLATION OF TITLE VII (HOSTILE WORK ENVIRONMENT)**

92.     Plaintiff realleges and incorporates by reference paragraphs 1-46 as if fully set forth herein.

93.     Plaintiff, a woman, is a member of a protected class as defined by Title VII. Plaintiff was harassed because she is a woman. But for that status, Plaintiff would have been treated differently by Defendant leading up to and after the reporting of Mr. Diaz's misconduct.

94.     Plaintiff did not welcome the offensive acts and statements of Mr. Diaz. His conduct (as well as the ensuing conduct of, at a minimum, Ms. Bryan and Mr. Robeldo) was severe and pervasive to a degree that it materially altered the terms or conditions of Plaintiff's employment.

95.     Among other factors demonstrating that Defendant's work environment had become hostile to Plaintiff, the following occurred:

a.  Defendant urged Plaintiff to drop police charges in connection with her 2019 rape by a co-worker;

b.  Defendant urged Plaintiff not to make a formal report of Mr. Diaz's physical and verbal harassment, assault, and battery in December 2020;

c.  Defendant urged Plaintiff not to seek a temporary restraining order against Mr. Diaz in December 2021;

d.  Defendant forced Plaintiff to work in close quarters on a project with Mr. Diaz despite previously promising that she would not be required to work with Mr. Diaz;

    e.   Plaintiff was subjected to routine and pervasive unwanted touchings and comments by Mr. Diaz, in plain view of many of Plaintiff's coworkers and superiors;

    f.   Plaintiff's job security was threatened by Defendant's management and human resources representative in February 2021;

    g.   In January 2022, Defendant's management and human resources representative told Plaintiff that her objections to Mr. Diaz (including forcefully telling him to "stop" encroaching on her space and making vulgar comments) was not enough to warrant reprimand of Mr. Diaz; and

    h.   Defendant repeatedly denied Plaintiff's transfer requests to get away from Mr. Diaz.

96.    A reasonable person would have found that the offensive acts and statements materially altered the terms or conditions of Plaintiff's employment—and Plaintiff believed that such conduct did materially alter the terms or conditions of her employment.

97.    Defendant, through Mr. Robeldo, Ms. Bryan, Mr. Burk, and otherwise, knew about the hostile work environment.

98.    And yet, Defendant failed to take prompt remedial action to eliminate the hostile work environment. Instead, Defendant (through Mr. Robeldo, Ms. Bryan, and Mr. Burk) turned on Plaintiff.

99.    Plaintiff suffered damages as a result of Defendant's hostile work environment in an amount to be determined at trial.

## COUNT VII
## VIOLATION OF FCRA (RETALIATION)

100.    Plaintiff realleges and incorporates by reference paragraphs 1-46 as if fully set forth herein.

101.    Plaintiff engaged in protected activity when she (a) complained of Mr. Diaz's harassment and assault to Defendant (including to her direct supervisor and human resources liaison).

102.    Plaintiff, a woman, is a member of a protected class as defined by the FCRA. But for that status, Plaintiff would have been treated differently by Defendant leading up to and after the reporting of Mr. Diaz's misconduct.

103.    Plaintiff suffered materially adverse employment actions through the refusal to correct Mr. Diaz's misconduct (e.g., forcing her to work directly with her abuser on a joint project despite multiple documented instances of misconduct), refusing to remedy any of her complaints, and denying repeated transfer requests. Instead: Defendants (through Mr. Robeldo, Ms. Bryan, and Mr. Burk, at a minimum), turned on Plaintiff (and ratified Mr. Diaz's continuing and worsening workplace conduct).

104.    Defendant's conduct constitutes unlawful retaliation against Plaintiff.

105.    The unlawful employment practices Plaintiff complained of were intentional, with willful and wanton disregard, malice, or reckless indifference for Plaintiff's federally protected rights.

106.   As a result of Defendant's conduct, Plaintiff has been damaged in an amount to be determined at trial.

## COUNT VIII
## VIOLATION OF FCRA (CONSTRUCTIVE DISCHARGE)

107.   Plaintiff realleges and incorporates by reference paragraphs 1-46 as if fully set forth herein.

108.   Plaintiff, a woman, is a member of a protected class as defined by the FCRA. But for that status, Plaintiff would have been treated differently by Defendant leading up to and after the reporting of Mr. Diaz's misconduct.

109.   Plaintiff resigned in February 2022. Among other factors contributing to Plaintiff's resignation, the following occurred:

    a. Defendant urged Plaintiff to drop police charges in connection with her 2019 rape by a co-worker;

    b. Defendant urged Plaintiff not to make a formal report of Mr. Diaz's physical and verbal harassment, assault, and battery in December 2020;

    c. Defendant urged Plaintiff not to seek a temporary restraining order against Mr. Diaz in December 2021;

    d. Defendant forced Plaintiff to work in close quarters on a project with Mr. Diaz despite previously promising that she would not be required to work with Mr. Diaz;

    e. Plaintiff was subjected to routine and pervasive unwanted touchings and comments by Mr. Diaz, in plain view of many of Plaintiff's coworkers and superiors;

    f. Plaintiff's job security was threatened by Defendant's management and human resources representative in February 2021;

g.  In January 2022, Defendant's management and human resources representative told Plaintiff that her objections to Mr. Diaz (including forcefully telling him to "stop" encroaching on her space and making vulgar comments) was not enough to warrant reprimand of Mr. Diaz; and

h.  Defendant repeatedly denied Plaintiff's transfer requests to get away from Mr. Diaz.

110.  These working conditions were so intolerable that a reasonable person in Plaintiff's position would have been compelled to resign.

111.  As a result of Defendant's conduct, Plaintiff has been damaged in an amount to be determined at trial.

**COUNT IX**
**VIOLATION OF FCRA (HOSTILE WORK ENVIRONMENT)**

112.  Plaintiff realleges and incorporates by reference paragraphs 1-46 as if fully set forth herein.

113.  Plaintiff, a woman, is a member of a protected class as defined by the FCRA. Plaintiff was harassed because she is a woman. But for that status, Plaintiff would have been treated differently by Defendant leading up to and after the reporting of Mr. Diaz's misconduct.

114.  Plaintiff did not welcome the offensive acts and statements of Mr. Diaz. His conduct (as well as the ensuing conduct of, at a minimum, Ms. Bryan and Mr. Robeldo) was severe and pervasive to a degree that it materially altered the terms or conditions of Plaintiff's employment.

115.  Among other factors demonstrating that Defendant's work environment had become hostile to Plaintiff, the following occurred:

a. Defendant urged Plaintiff to drop police charges in connection with her 2019 rape by a co-worker;

b. Defendant urged Plaintiff not to make a formal report of Mr. Diaz's physical and verbal harassment, assault, and battery in December 2020;

c. Defendant urged Plaintiff not to seek a temporary restraining order against Mr. Diaz in December 2021;

d. Defendant forced Plaintiff to work in close quarters on a project with Mr. Diaz despite previously promising that she would not be required to work with Mr. Diaz;

e. Plaintiff was subjected to routine and pervasive unwanted touchings and comments by Mr. Diaz, in plain view of many of Plaintiff's coworkers and superiors;

f. Plaintiff's job security was threatened by Defendant's management and human resources representative in February 2021;

g. In January 2022, Defendant's management and human resources representative told Plaintiff that her objections to Mr. Diaz (including forcefully telling him to "stop" encroaching on her space and making vulgar comments) was not enough to warrant reprimand of Mr. Diaz; and

h. Defendant repeatedly denied Plaintiff's transfer requests to get away from Mr. Diaz.

116. A reasonable person would have found that the offensive acts and statements materially altered the terms or conditions of Plaintiff's employment—and Plaintiff believed that such conduct did materially alter the terms or conditions of her employment.

117. Defendant, through Mr. Robeldo, Ms. Bryan, Mr. Burk, and otherwise knew about the hostile work environment.

118.    And yet, Defendant failed to take prompt remedial action to eliminate the hostile work environment. Instead, Defendant (through Mr. Robeldo, Ms. Bryan, and Mr. Burk) turned on Plaintiff.

119.    Plaintiff suffered damages as a result of Defendant's hostile work environment in an amount to be determined at trial.

## PRAYER FOR RELIEF

120.    Plaintiff requests the Court enter judgment in her favor and award her the following:

a.  Actual, presumed, compensatory, and punitive damages for Wyndham's tortious conduct to the fullest extent permitted by law;

b.  All statutorily available damages pursuant to Title VII to the fullest extent permitted by law (including backpay, compensatory, and punitive damages);

c.  All statutorily available damages pursuant to the FCRA to the fullest extent permitted by law (including backpay, compensatory, and punitive damages);

d.  Costs and reasonable attorneys' fees;

e.  Pre-judgment and post-judgment interest;

f.  Final judgment on all counts in an amount of no less than $10,000,000; and

g.  Such other relief this Court deems just and proper.

## JURY TRIAL DEMAND

Plaintiff demands a jury trial on all issues that are triable to a jury.

Dated: June 12, 2023                    Respectfully submitted,

By: *s/ Christopher S. Prater*
Jonathan E. Pollard
Florida Bar No.: 83613
jpollard@pollardllc.com
**Lead Counsel**

Christopher S. Prater
Florida Bar No.: 105488
cprater@pollardllc.com

Michael A. Boehringer Florida
Bar No.: 1018486
mboehringer@pollardllc.com

**Pollard PLLC**
401 E. Las Olas Blvd., Ste. 1400
Fort Lauderdale, FL 33031
Telephone: (954) 332-2380
*Attorneys for Plaintiff Jane Doe*